RALPH F. MADONNA *et al.*, Plaintiffs, v. MICHAEL J. GIACOBBE *et al.*, Defendants (Michael J. Giacobbe *et al.*, Third–Party Counterplaintiffs-Appellants; The City of Wood Dale *et al.*, Counterdefendants-Appellees).

Second District   No. 2—88—0980

Opinion filed November 9, 1989.

John H. Brechin, of Downers Grove, and Kenneth E. Poris, of Poris, Lawrence & Evans, of Lisle, for appellants.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, Joseph P. Storto, of Joseph P. Storto, P.C., & Associates, of Bensenville, and McDermott, Will & Emery, of Chicago, for appellee James Whalen.

Kathleen T. Zellner, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Lisle, Karen L. Douglas and Martin A. Kanofsky, both of Pretzel

& Stouffer, Chartered, of Chicago, and Erwin W. Jentsch, of Bradtke & Zimmermann, of Mount Prospect, for other appellees.

JUSTICE DUNN delivered the opinion of the court:

Counterplaintiffs, Michael Giacobbe and Woodside Builders, Inc., appeal from an order of the circuit court of Du Page County, dismissing their fourth amended counterclaim against counterdefendants, City of Wood Dale, Jerry Greer, the mayor of Wood Dale, and seven members of the Wood Dale city council. On appeal, counterplaintiffs assert that their fourth amended counterclaim stated a cause of action for breach of contract, tortious interference with contract, and tortious interference with a business expectancy. Counterplaintiffs contend in the alternative that if their fourth amended counterclaim was insufficient, they should have been granted leave to amend. We affirm.

This seemingly endless litigation was commenced on October 18, 1976, when plaintiffs, Ralph and Dorothy Madonna, filed a complaint against Giacobbe, Woodside, the City of Wood Dale (the City), and a land trust which held legal title to a subdivision just north of property owned by the Madonnas. The complaint alleged that Giacobbe and Woodside were constructing single-family residences in the subdivision, diverting the natural flow of drainage as a result, and causing surface water from the subdivision to flow onto the Madonnas' land. The Madonnas sought monetary damages and injunctive relief in their complaint.

On October 27, 1976, the City filed a complaint for indemnity against Giacobbe, Woodside, and the land trust. The City asserted that any active acts of negligence relating to the Madonna complaint were committed by Giacobbe, Woodside, and the land trust, and that any acts of negligence committed by the City were passive acts. In the event of a judgment against the City on the Madonna complaint, the City sought judgment in a like amount against Giacobbe and the other defendants.

Giacobbe and Woodside made the following allegations in the fourth amended counterclaim. Woodside was an Illinois corporation engaged in the business of developing and selling real estate, and Giacobbe was the beneficiary of a land trust which held title to certain real property in Du Page County. On May 6, 1976, Giacobbe, the land trust, and the City entered into a written agreement which provided that the City would annex the subject property. The agreement stated that the City would approve a plat which would subdivide the property into 33 lots for the purpose of allowing Giacobbe to construct a

single-family home on each lot.

Paragraph 3D of the agreement stated that Giacobbe would build a water detention basin on lots 6, 7, and 8 of the subdivision. No homes would be constructed on these lots. Subparagraph 2 of paragraph 3D stated as follows:

> "It is understood, however, that at such time as the OWNER enters into an agreement with the owner of other property located immediately to the South of and contiguous to the SUBJECT PROPERTY, the CITY will permit storm water detention in the amount required hereinabove to be located upon such other property to the South and contiguous to the SUBJECT PROPERTY, provided the OWNER has obtained prior approval by the County of Du Page and the City Council of the CITY of the Engineering Plans of the aforesaid detention basin and the said detention basin agreement. In the event of such approval by the County and the CITY, the OWNER may submit and apply for building permits for Lots No. 6, 7, and 8 in the manner set forth in the Ordinances of the CITY and this Agreement."

Paragraph 5 of the agreement prohibited the City from issuing stop orders directing cessation of work on the project without detailing the necessary corrective action and specifying the section of the City code violated by Giacobbe. Paragraph 6 stated that, in order to guaranty his obligation to construct certain public improvements, Giacobbe would be required to post a subdivision bond, provide a straight-line letter of credit or letter of guaranty from a recognized lending institution, or make an interest-bearing cash deposit with the City treasurer.

Paragraph 7 of the agreement provided that the City would issue building permits for the project upon application and submission of plans drawn in accordance with City ordinances. The City was required to issue the permits under such a circumstance even if the public improvements required under the agreement had not yet been constructed by Giacobbe, so long as appropriate provisions had been made to ensure installation of the improvements and final plans for their installation had been approved by the City council.

Count I of the fourth amended complaint alleged that the City breached the annexation agreement. Giacobbe and Woodside alleged in count I that the following actions by the City constituted breaches of the contract: (1) issuance of stop orders and refusal to issue building or occupancy permits on or about November 11, 1976, for lots 11 through 21, and prevention of the completion of the main road serving the subdivision; (2) enforcement of a moratorium on the issuance

of building or occupancy permits beginning on May 14, 1977; (3) issuance of stop orders and refusal to issue building or occupancy permits on other occasions; (4) refusal in January 1977 to consider approving an agreement between Giacobbe and the Madonnas which made provision for the detention of storm water from the subdivision on the Madonna property; (5) requiring Giacobbe in 1978 to reengineer storm water detention for the subdivision in a manner which forced him to use an addition lot, lot 18, to detain storm water; (6) refusal to issue building permits for lots 7 and 8 after the reengineering of the storm water detention even though those lots were no longer necessary for that purpose; and (7) refusal to permit Giacobbe to guaranty his obligations under the agreement with a letter of credit and requiring him instead to establish a cash escrow.

In count II of the fourth amended counterclaim, Giacobbe and Woodside alleged as follows. At about the same time the City annexed the subdivision, Giacobbe and the Madonnas entered into an oral agreement which would have allowed Giacobbe to locate the storm water detention basin for the subdivision on the Madonna property. Throughout 1976, Giacobbe and the Madonnas advised Mayor Greer and the seven City council members named as counterdefendants of this oral agreement on several occasions, including various City council and council subcommittee meetings.

The individual counterdefendants told Giacobbe and the Madonnas that despite the favorable recommendations of the City's engineers, the mayor and council would never approve the oral agreement while the lawsuit by the Madonnas against the City remained pending. Those counterdefendants refused to consider approving the oral agreement, causing the Madonnas to breach it. Count II further alleged that the individual counterdefendants intentionally, maliciously, and without legal justification induced this breach of the oral agreement between Giacobbe and the Madonnas. Count III contained essentially the same allegations, but accused both the City and the other counterdefendants of intentionally, maliciously, and without legal justification of interfering with the prospective business relationship between Giacobbe and the Madonnas.

Giacobbe and Woodside alleged in count IV that the individual counterdefendants intentionally, maliciously, and without legal justification induced the City to breach the annexation agreement by taking certain actions. These included: (1) causing stop orders to be issued which halted work on required subdivision improvements and prevented completion of construction of single-family residences in the subdivisions; (2) refusing to issue building permits and occupancy cer-

tificates for residences being constructed or to be constructed in the subdivision; (3) refusing to consider approving the agreement between Giacobbe and the Madonnas; (4) requiring Giacobbe to reengineer storm water detention for the property; (5) refusing to issue building permits for lots 7 and 8 even though they were no longer necessary for water detention; and (6) refusing to allow Giacobbe to guaranty performance of his obligations under the agreement with a letter of credit and, instead, requiring him to establish a cash escrow.

On August 25, 1988, the trial court entered an order dismissing the fourth amended counterclaim. Giacobbe and Woodside subsequently filed a motion for entry of a finding by the trial court that no just reason existed to delay enforcement of or appeal from the dismissal order. The trial judge granted the motion and made the requested finding in an order dated September 20, 1988. Giacobbe and Woodside then filed a timely notice of appeal from the dismissal order.

■■ ■ Although pleadings are to be construed liberally with a view of doing justice between the parties (Ill. Rev. Stat. 1987, ch. 110, par. 2—603(c)), this does not lessen plaintiff's obligation to plead facts necessary for recovery under the complaint. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 516.) A complaint fails to state a cause of action if it does not contain factual allegations of every fact that must be proved in order for plaintiff to be entitled to a judgment in his or her favor. (*Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 287; *In re Beatty* (1987), 118 Ill. 2d 489, 499.) If a complaint does not contain sufficient factual averments and set out every fact essential to be proved, any deficiencies may not be cured through liberal construction. *Beckman*, 123 Ill. 2d at 287; *Beatty*, 118 Ill. 2d at 499.

■■ We will first consider the sufficiency of the allegations in count I that the City breached the terms of the annexation agreement with Giacobbe. A complaint alleging breach of contract must contain factual allegations of the existence of a valid contract, breach of the contract by defendant, resultant injury to plaintiff, and performance by plaintiff. (*Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 233.) In our opinion, count I does not sufficiently allege that the City breached the annexation agreement.

Several of the alleged breaches of contract by the City concern the issuance of orders to stop work on the project and the refusal to issue building permits or occupancy certificates. Woodside and Giacobbe failed to allege sufficient facts to establish that these actions were breaches of the annexation agreement. Paragraph 5 of the

agreement did not prohibit the City from issuing stop orders for the project; it merely provided that if the City did so, it would have to specify the section of the City code that Giacobbe and Woodside violated and also specify the necessary corrective measures. There were no facts pleaded in the fourth amended counterclaim which indicate that the City did not comply with these requirements of paragraph 5 when it issued the stop orders.

Under paragraph 7 of the agreement, the City was required to issue building permits only if Giacobbe and Woodside submitted plans for the homes in accordance with City ordinances and if their plans for public improvements had been approved by the City council. There were no facts alleged in count I indicating that Giacobbe and Woodside had complied with these requirements.

■ We recognize, additionally, that all contracts contain implied covenants of good faith between the parties. (*Osten v. Shah* (1982), 104 Ill. App. 3d 784, 786.) Thus, if the City acted in bad faith in issuing stop orders or declining to issue building permits or occupancy certificates, this would constitute a breach of the annexation agreement. Giacobbe and Woodside failed to plead any facts which would indicate these actions were taken in bad faith, however.

■ Giacobbe and Woodside pleaded in count I that the City refused to issue building permits and occupancy certificates for certain lots and issued stop orders. As we have seen, these actions do not necessarily constitute breaches of the annexation agreement. Since Giacobbe and Woodside failed to plead the additional facts necessary to establish that these actions constituted breaches of the annexation agreement, the above allegations were insufficient to state a cause of action for breach of contract.

The other allegations of count I are also insufficient to state a cause of action for breach of contract. Giacobbe and Woodside alleged in count I that the City prevented completion of the main road serving the subdivision but did not plead any further facts tending to show this was a breach of contract. They also alleged that the City failed to consider approving an agreement between Giacobbe and the Madonnas to provide for storm water detention for the subdivision. Under subsection 2 of paragraph 3D of the annexation agreement, the City was only required to approve such an agreement between Giacobbe and the Madonnas if the engineering plans for the storm water detention basin to be located on the Madonna property had been approved by the City council and the County of Du Page. No facts were pleaded indicating this had occurred.

■ Woodside and Giacobbe also alleged that the City required

them to use lot 18 of the subdivision for storm water detention, contrary to a utility plan attached as an exhibit to the annexation agreement. Although most of the annexation agreement is attached to the fourth amended counterclaim, the utility plan is not. None of the provisions of the utility plan are set forth in the fourth amended counterclaim. Accordingly, Giacobbe and Woodside failed to plead sufficient facts to support their allegation that the City breached the annexation agreement by compelling them to use lot 18 for storm water detention.

■ Woodside and Giacobbe also alleged that the City refused to allow them to guaranty their obligations under the annexation agreement with a letter of credit, requiring instead the establishment of a cash escrow. Paragraph 6 of the agreement stated that Giacobbe had the option of guaranteeing his obligations with a subdivision bond, an interest-bearing cash deposit with the City treasurer, or a straight-line letter of credit or letter of guaranty from any recognized lending institution in the form attached to the agreement as exhibit C. That exhibit was not attached to the fourth amended counterclaim, nor was it described in count I. No facts were alleged establishing that Giacobbe presented a letter of credit in the proper form to the City. Accordingly, the above allegations are insufficient to set forth a cause of action for breach of contract.

Count I was factually insufficient because Giacobbe and Woodside failed to plead every fact they would need to prove in order to establish that the City breached the annexation agreement. Accordingly, the dismissal of count I was proper.

In count II, Giacobbe and Woodside allege that the individual defendants tortiously interfered with their contractual relation with the Madonnas. They alleged in count III that all counterdefendants tortiously interfered with their business expectancy relating to the Madonnas. In count IV, they alleged that the individual counterdefendants tortiously interfered with their contractual relations with the City.

■ The elements of tortious interference with a business expectancy are that: (1) plaintiff has a valid business expectancy; (2) defendant has knowledge of the expectancy; (3) defendant intentionally interferes with the prospective business relationship and prevents its realization; and (4) resultant damage to plaintiff. (*Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 175.) The elements of tortious interference with contractual rights are: (1) the existence of a valid, enforceable contract between plaintiff and another; (2) defendant's awareness of this contractual relationship; (3) intentional and

unjustified inducement by defendant of a breach of the contract; (4) a breach of the contract as a result of defendant's wrongful acts; and (5) resultant damage to plaintiff. (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 154-55.) These two torts are closely allied with each other since both stem from a recognition that a person's business relationships constitute a property interest which should be protected from unjustified interference. *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551.

■ In intentional interference with contract cases, courts will recognize a privilege if defendant was acting to protect an interest which the law considers to be of equal or greater value than plaintiff's contractual rights. (*HPI*, 131 Ill. 2d at 157.) A defendant protected by such a privilege is not justified in engaging in conduct completely unrelated or antagonistic to the interest which gave rise to the privilege. (*HPI*, 131 Ill. 2d at 158.) If a privilege exists in defendant's favor, plaintiff must allege facts from which it is reasonable to infer that defendant's conduct was unjustified. *HPI*, 131 Ill. 2d at 158.

■■ ■ Our supreme court has recognized a privilege in intentional interference with contract cases in favor of corporate officers and directors to use their best business judgment and discretion on behalf of their corporations. (See *Swager v. Couri* (1979), 77 Ill. 2d 173, 190-91.) It would seem appropriate to recognize such a privilege for municipal officers to use their best judgment and discretion on behalf of their municipalities. In *Mahoney Grease Service, Inc. v. City of Joliet* (1980), 85 Ill. App. 3d 578, the court stated that as a general rule, members of legislative bodies cannot be held personally liable for damages based upon their exercise of discretion. (*Mahoney*, 85 Ill. App. 3d at 581.) The court stated that "the officers of a municipal corporation, like those of a private corporation, are agents of the corporate body and are shielded from personal liability for their ordinary acts in behalf of and for the corporate body." 85 Ill. App. 3d at 582.

Several provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*) also support the recognition of such a privilege. Under sections 2—103 and 2—205 of the Act (Ill. Rev. Stat. 1987, ch. 85, pars. 2—103, 2—205), local public entities and public employees are not liable for any injury caused by their failure to adopt an enactment or to enforce any law. Under section 2—201 of the Act (Ill. Rev. Stat. 1987, ch. 85, par. 2—201), public employees serving in positions involving policy determination or the exercise of discretion are not liable for acts or omissions in determining policy when acting in the exercise of such discretion.

■■ ■ The principle behind legislative immunity and immunity for other public officials is that it will be difficult for public officials to carry out their duties if they are constantly faced with the threat of lawsuits from those who are adversely affected by their discretionary decisions. (*Fryman v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 615.) The aforementioned provisions of the Act do not apply to acts resulting from corrupt or malicious motives. (*Idlehour Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 52.) Nevertheless, we believe these provisions make it clear that the interest served by limiting the liability of public officials and their exposure to the threat of lawsuit for discretionary acts is at least equal in value to counterplaintiffs' contractual rights. We therefore conclude that the individual counterdefendants were protected by a privilege. Under the *HPI* holding, Giacobbe and Woodside were required to plead facts from which it could reasonably be inferred that the conduct of the individual counterdefendants was not justified.

■■■ We note that in *HPI*, plaintiff alleged intentional interference with contractual relations, and our supreme court did not specifically indicate whether its holding applied to allegations of intentional interference with business expectancies. Because of the close relationship between these two torts (*Belden Corp v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551), we conclude that the same pleading requirement exists with regard to intentional interference with business expectancies when a privilege applies. Woodside and Giacobbe were therefore required to plead facts from which it would be reasonable to infer that the conduct of the individual counterdefendants was not justified in counts II, III, and IV.

■■ Woodside and Giacobbe failed to allege such facts. The primary allegation of counts II and III is that the individual counterdefendants told Giacobbe and the Madonnas that they would not approve the oral agreement between those parties providing for storm water detention on the Madonna property while the Madonna lawsuit against the City was pending. There are no pleaded facts that would indicate this alleged refusal resulted from corrupt or malicious motives and was not an action undertaken in the interest of the City. Indeed, it would appear on its face that such an action was in the City's interests when the City was being sued by the Madonnas for its alleged role in allowing storm water to run onto the Madonna property. Counts II and III do not contain sufficient facts to adequately allege lack of justification.

Count IV suffers from the same deficiency. Giacobbe and Woodside alleged in that count that the individual counterdefendants in-

duced a breach in the annexation agreement by taking certain actions including refusal to consider or approve the oral agreement with the Madonnas, issuance of stop orders for the project, refusal to issue building permits and occupancy certificates, requiring Giacobbe to reengineer storm water detention for the subdivision, and requiring a cash escrow to be established by Giacobbe to guaranty his obligations under the annexation agreement, instead of allowing him to do so with a letter of credit. There are no facts pleaded, however, from which it could be inferred that these actions resulted from corrupt and malicious motives rather than the belief they were in the City's best interests. Accordingly, count IV failed to state a cause of action.

Counts II, III, and IV were properly dismissed as to the individual counterdefendants. Count III, which alleged intentional interference with business expectancies, was also brought against the City. Under section 2—109 of the Act, however, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." (Ill. Rev. Stat. 1987, ch. 85, par. 2—109.) Since the individual counterdefendants, who were allegedly acting as employees of the City, could not be held liable under the allegations of the fourth amended counterclaim, the City also could not have been held liable. Count III was properly dismissed as to all counterdefendants.

■■■ Finally, Giacobbe and Woodside argue that, even if the fourth amended counterclaim was correctly dismissed, the trial court should have granted them leave to further amend their counterclaim. This contention is completely without merit. Giacobbe and Woodside never sought leave to amend their fourth amended counterclaim in the trial court and have therefore waived this issue for purposes of review. *Cuerton v. Abbott Laboratories, Inc.* (1982), 111 Ill. App. 3d 261, 267; *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 670.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.