JACK W. SCHULER, Plaintiff-Appellant, v. ABBOTT LABORATORIES, Defendant-Appellee.

First District (4th Division)    No. 1—92—3431

Opinion filed October 14, 1993.

George F. Galland, Jr., of Davis, Miner, Barnhill & Galland, P.C., of Chicago, for appellant.

Kenneth J. Jurek, Howard J. Roin, Bennett W. Lasko, and Ellen M. Bublick, all of Mayer, Brown & Platt, of Chicago, for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Jack W. Schuler sued his former employer, Abbott Laboratories, alleging tortious interference with his economic advantage. He claimed Abbott unfairly invoked a noncompetition agreement when two of Abbott's competitors sought to hire Schuler, and that Abbott advised a third noncompeting company not to hire Schuler. Abbott moved to dismiss. The trial court granted the motion, holding Schuler failed to properly plead the elements of tortious interference with economic advantage for each allegation. We affirm.

Abbott employed Schuler from 1972 to 1989. Schuler spent his last two years with Abbott as president and chief operating officer. Schuler and Abbott's then board chairman and chief executive officer (CEO) differed on critical issues facing the company. In July of 1989, the CEO demanded Schuler's resignation.

Abbott and Schuler began to negotiate a termination agreement. Abbott proposed an agreement which paid Schuler substantial termination benefits and in return prevented him from working for any competitor worldwide for six years. Schuler testified the parties orally agreed that the only method of enforcing a violation of the noncompetition clause would be forfeiture by Schuler of benefits yet

to be paid by Abbott. The written agreement, however, contained a clause which allowed Abbott to seek an injunction prohibiting Schuler from working for a competitor. Schuler also testified that after the agreement was signed, Abbott orally agreed not to seek an injunction to prevent Schuler from working for a competitor, but that terms of his release from the noncompetition clause would be negotiated as circumstances arose.

In 1990, a competitor of Abbott, "Company A," contacted Schuler about employment in their medical diagnostics business. Schuler began to negotiate with Company A and told Abbott of the opportunity. Company A told Schuler they would not hire him if to do so would risk a lawsuit by Abbott. Abbott, in turn, told Schuler they would enforce their right under the agreement to seek an injunction. Schuler told Company A of Abbott's position, and Company A refused to hire him.

Again in 1990, "Company B," a European pharmaceutical firm, contacted Schuler proposing that he temporarily manage their diagnostics division and search for partners to begin a new diagnostics company. Again, Abbott told Schuler they would seek an injunction to enforce the noncompetition agreement. When made aware of Abbott's position, Company B broke off negotiations with Schuler.

Also in 1990, a third company, "Company C," which did not compete with Abbott, contacted Schuler to explore the possibility of Schuler becoming its CEO. At the time, Abbott had the right to designate a member on Company C's board of directors. In 1988, Abbott designated Duane L. Burnham, then chief financial officer for Abbott, to fill the board seat. In 1990, Burnham still held the board seat at Company C but had become the CEO of Abbott.

Company C was prepared to offer Schuler a generous stock offering if he became CEO, and Schuler was prepared to accept the position. When Burnham heard of Company C's negotiations with Schuler, he reacted angrily at a board meeting and criticized Company C for considering Schuler. According to the complaint, he raised "aggressive opposition" to Company C's plan to hire Schuler. Company C then broke off negotiations with Schuler.

In December of 1990, Schuler sought a declaratory judgment in the circuit court of Cook County to invalidate the agreement. The suit alleged the agreement was overly broad in geographic scope and duration, and that Schuler lacked any knowledge that would qualify as a protectable interest of Abbott. After defending the suit for 10 months, Abbott agreed not to enforce the noncompetition agreement by injunction or by a suit against a third party seeking to hire Schuler. A judgment order to that effect was entered on October 28, 1991.

On January 16, 1992, Schuler filed a three-count complaint against Abbott. Each count alleged tortious interference with a prospective economic advantage. Count I addressed the lost opportunity at Company A, count II the lost opportunity at Company B, and count III the lost opportunity at Company C. Abbott moved to dismiss the complaint under both sections 2—615 and 2—619 of the Illinois Code of Civil Procedure. Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619, now codified as 735 ILCS 5/2—615, 2—619 (West 1992).

The trial court dismissed each count under section 2—615. The court ruled that counts I and II failed to properly plead each element of tortious interference with economic advantage because Schuler did not allege any activity of Abbott's directed at a third party. In count III, the court ruled that Schuler failed to plead sufficient facts to overcome the presumption that Burnham acted in the interests of Company C when he advised them not to hire Schuler. The court allowed leave to replead count III only. Schuler chose to stand on count III as pled, and a final judgment order was entered on all three counts. Schuler then appealed.

In considering a section 2—615 motion, all well-pled facts in a complaint are taken as true with all inferences drawn in favor of the nonmovant. (*Geick v. Kay* (1992), 236 Ill. App. 3d 868, 603 N.E.2d 121.) A complaint fails to state a cause of action if it does not contain allegations of each fact that must be proved to sustain a judgment for the plaintiff. (*Madonna v. Giacobbe* (1989), 190 Ill. App. 3d 859, 546 N.E.2d 1145.) The complaint may not rest on factual conclusions not supported by allegations of specific facts. *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.* (1991), 213 Ill. App. 3d 510, 572 N.E.2d 1090.

●1 The tort of interference with prospective economic advantage has four elements: (1) plaintiff must have a reasonable expectancy of a valid business relationship; (2) defendant must know about it; (3) defendant must intentionally interfere with the expectancy, and so prevent it from ripening into a valid business relationship; and (4) intentional interference must injure the plaintiff. *Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 568 N.E.2d 870.

Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party. (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 357 N.E.2d 211; *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority* (1992), 229 Ill. App. 3d 793, 594 N.E.2d 1334.) Here, the requirement is met because Schuler alleged business opportunities with three identifiable companies. Plaintiff must also allege action by the interfering party directed towards the party with whom the plaintiff

expects to do business. (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176; *Westland v. Sero of New Haven, Inc.* (N.D. Ill. 1985), 601 F. Supp. 163.) Defendant argues this requirement necessarily implies that the interfering party must make contact with the third party. While it is true that "action directed at a third party" will often include contact with the third party, we can find no requirement of contact in the law and do not create one now.

•2 In counts I and II, the interference alleged by Schuler was Abbott's claim that they would seek enforcement of the noncompetition agreement if Schuler began working for Company A or Company B. Abbott never spoke to or communicated directly with Company A or Company B. Abbott merely told Schuler that they would seek to enforce in court the agreement which Schuler himself signed in the presence of his attorney. Although enforcing the agreement was likely to affect others besides Schuler, Abbott conducted no activity with anyone but Schuler and expressed a desire only to prevent Schuler from violating the letter of his agreement. Under these facts, we find Abbott did not take action directed at a third party.

Schuler claims Abbott in effect took action directed at Company A and Company B because Abbott knew that enforcement was likely to dissuade the companies from hiring Schuler. Courts have rejected this argument, instead requiring that the interfering action be directed in the first instance at the third party. *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176; *State National Bank v. Academia, Inc.* (Tex. Ct. App. 1990), 802 S.W.2d 282 (interpreting Illinois law).

Count III, addressed to the actions of Abbott's executive as a board member of Company C, is governed by a different principle. Where the defendant acts under a privilege or with justification, it is plaintiff's burden to plead malice or lack of justification to satisfy the elements of tortious interference with economic advantage. (*Fellhauer*, 142 Ill. 2d at 512-13; *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 545 N.E.2d 672; *Madonna v. Giacobbe* (1989), 190 Ill. App. 3d 859, 546 N.E.2d 1145; *Venturini v. Affatato* (1980), 84 Ill. App. 3d 547, 405 N.E.2d 1093.) The actions of corporate officers and directors who use their best business judgment and discretion on behalf of their corporations are clothed with a privilege. *Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921; *HPI Health Care*, 131 Ill. 2d at 157.

In count III, Schuler alleged that the CEO of Abbott, a board member of Company C, interfered with Schuler's opportunity at Company C by opposing his employment at a board meeting. In an attempt to overcome the privilege afforded corporate directors,

Schuler pled: "Burnham reacted angrily to the news of these negotiations [with Schuler], severely criticized the Chairman and his colleagues for undertaking them, and raised aggressive opposition to Company C's proceeding further with the plan to hire plaintiff." Schuler also pled, on information and belief, that Burnham's opposition was not based on a good-faith judgment that it was in the interests of Company C, but rather part of Abbott's plan to keep Schuler from working anywhere in the health care industry. The trial judge found that Schuler insufficiently pled malice and offered Schuler the opportunity to replead. Schuler declined and took this appeal.

We agree with the trial court. Schuler's pleading only reveals that Burnham was opposed to Company C hiring Schuler and that Burnham was angry when he informed the board of his position. One way to plead malice is to allege facts that support the conclusion that the director's actions were unrelated or antagonistic to the interest that gave rise to the privilege. (*HPI Health Care*, 131 Ill. 2d at 158-59; *Madonna v. Giacobbe* (1989), 190 Ill. App. 3d 859, 546 N.E.2d 1145; *Philip I. Mappa Interests, Ltd. v. Kendle* (1990), 196 Ill. App. 3d 703, 554 N.E.2d 1008.) Schuler attempted to do so, but only on information and belief and without allegations of specific facts from which we could conclude that Burnham was not acting in Company C's best interest when he advised them not to hire Schuler. Bare allegations of malice, without factual support, do not overcome a privilege. *Philip I. Mappa*, 196 Ill. App. 3d at 708-10.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.