**LYNCH FORD, INC., an Illinois Corporation, Plaintiff,**

v.

**FORD MOTOR COMPANY, INC., Defendant.**

No. 96 C 3793.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 24, 1997.

Joseph R. Marconi, Michael James Lynch, David M. Macksey, Johnson & Bell, Ltd., Chicago, IL, for Plaintiff.

Michael Rowe Feagley, George James Tzanetopoulos, David Elliot Metz, Mayer, Brown & Platt, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the Court on Defendant Ford Motor Company Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12. For the reasons set forth below, the motion is granted.

### I. BACKGROUND

Plaintiff, Lynch Ford, Inc. ("Lynch"), is an Illinois corporation with its principal place of business in Illinois. Lynch is a franchise dealership of Defendant Ford Motor Company, Inc. ("Ford"). Lynch sells and services Ford vehicles.

Ford is a Delaware corporation with its principal place of business in Michigan.

As a franchisee, Lynch entered into a "Ford Sales and Service Agreement" ("Agreement"). Lynch has sold and serviced vehicles pursuant to its obligations under the agreement for many years.

Prestige Ford Sales and Services, Inc. ("Prestige"), is a Delaware corporation with its principal place of business in Illinois. Prestige is a subsidiary of Ford—Ford owns 100% of Prestige's stock. Prestige operates a franchise dealership in direct competition with and just south of Lynch's dealership.

Landmark Ford of Niles, Inc. ("Landmark"), is a Delaware corporation with its principal place of business in Illinois. Ford partially owns Landmark—it is one of three shareholders in Landmark. Landmark operates a franchise dealership in direct competition with and just north of Lynch's dealership.

In order to maintain its dealership, Lynch must sell a certain amount of vehicles. Pursuant to the Agreement, Lynch's sales performance is measured based on sales within its "dealership locality," which is the area of its sales and service responsibility. Lynch's sales performance is also measured based on a comparison with other authorized Ford dealers within its "sales zone and district." Ford determined Lynch's "dealership locality" and its "sales zone and district."

Once Ford determines the dealership locality, it is assigned to each dealership as a "primary market area" ("PMA"). Based on the PMA, Ford sets a quota as to the amount of vehicles each dealership should sell. Lynch's PMA includes areas within the suburbs and within the Chicago City limits. The PMA for Landmark is directly north of Lynch's PMA and the PMA for Prestige is directly south of Lynch's PMA. Thus, essentially, Lynch is surrounded by Ford owned dealerships. Lynch alleges that its PMA includes areas that are closer in proximity to other dealers. Accordingly, Lynch's sales quotas are too high while neighboring dealerships are too low.

As noted, Ford also compares Lynch's sales performance to other dealers within its "sales zone and district." The "sales zone and district" is known as the "multiple point" ("MP"). Lynch is in the North Chicago MP. There are only three Ford dealers, including Lynch, in the North Chicago MP which are located within the Chicago City limits. The other two dealers—North Side Ford and Weinman Ford—are located near the lakefront. The lakefront area is one of the few areas within city limits that is experiencing an increase in households. Lynch's PMA, on the other hand, includes areas within the city limits which are experiencing a decline in household income.

According to Ford, Lynch's sales performance does not compare favorably to other dealers in the Chicago North MP—particularly the suburban dealers. Accordingly, Ford issued Lynch a notice of termination due to unsatisfactory sales performance.

As a result of Ford's decision, Lynch filed a six-count complaint against Ford, alleging: (I) a breach of the sales and service agreement; (II) a violation of the Illinois Motor

Vehicle Franchise Act, 815 ILCS 710; (III) common law unfair competition; (IV) a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510; (V) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505; and (VI) a violation of the Automobile Dealer Day In Court Act, 15 U.S.C. § 1221.

## II. DISCUSSION

Ford seeks to dismiss three of the six counts—the common law unfair competition claim (Count III), the Illinois Uniform Deceptive Trade Practices Act claim (Count IV), and the Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count V). Following a statement of the applicable legal standard, the Court will analyze each count in turn.

### A. Motion to Dismiss—Legal Standard

In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. The Motion to Dismiss

#### 1. Common Law Unfair Competition

Count III alleges that Ford engaged in unfair competition by unfairly terminating Lynch's dealership in order to enhance the Ford owned dealerships of Landmark and Prestige. Understandably, Ford is rather confused as to how the allegations support a common law unfair competition claim. In response, Lynch elaborates further. It appears that Lynch's unfair competition claim is really three counts in one: (1) tortious interference with contract; (2) tortious interference with prospective business advantage; and (3) common law unfair competition. The Court will analyze each legal theory in turn.

#### a. Tortious Interference With Contract

In its response, Lynch argues that Ford's attempt to terminate Lynch's dealership constitutes as an interference with the Ford/Lynch Agreement. Ford counters, arguing that one cannot logically tortiously induce himself to breach a contract. The Court agrees.

Under Illinois law, "[i]t is clear that a party to a contract cannot be held liable for tortiously inducing himself to breach the contract," i.e., "[o]nly a third party separate from the contracting parties can be liable for such a tort." Rao v. Rao, 718 F.2d 219, 225 (7th Cir.1983) (emphasis added); accord, F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago, 754 F.2d 216, 221 (7th Cir.1985) ("Generally, a party cannot be liable in tort for interfering with its own contract.") cert. denied, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985); see, Muthuswamy v. Burke, 269 Ill.App.3d 728, 207 Ill.Dec. 50, 54, 646 N.E.2d 616, 620 (1993) (The first element of such a tort is "the existence of a valid and enforceable contract between plaintiff and a third party.") (emphasis added). Thus, Lynch's first theory of liability is a loser.

#### b. Tortious Interference With Prospective Economic Advantage

Lynch also argues that Ford's attempt to terminate its dealership constitutes as an interference with Lynch's prospective business advantage with its potential customers. Ford contends that Lynch's position is fundamentally flawed because Lynch fails to identify a specific third party to which it had a potential business relationship. The Court agrees.

The tort of interference with prospective economic advantage has four elements: (1) plaintiff must have a reasonable expectan-

cy of a valid business relationship with a third party; (2) defendant must know of the prospective business relationship; (3) defendant must intentionally interfere with the prospective business relationship such that the prospective business relationship never materializes; and (4) the interference must damage the plaintiff. *See, Schuler v. Abbott Lab.*, 265 Ill.App.3d 991, 203 Ill.Dec. 105, 108, 639 N.E.2d 144, 147 (1993); *Stofer v. First Nat'l Bank of Effingham*, 212 Ill.App.3d 530, 156. Ill.Dec. 570, 571 N.E.2d 157, 166 (1991).

▪ The Court need only focus on the first element to decide this matter. Lynch must *specifically* identify a third party to which it had a potential business relationship. *Schuler*, 203 Ill.Dec. at 108, 639 N.E.2d at 147 ("Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party."). That, Lynch failed to do. Lynch's allegation that Ford interfered with its "customers" will not suffice, absent the specific identification of one of those customers.[1] Lynch's second theory of liability is also a loser.

### c. *Common Law Unfair Competition*

▪ Finally, Lynch argues that Ford engaged in "unfair competition" by failing to inform the purchasing public that it has an ownership interest in the dealerships of Landmark and Prestige.[2] Ford responds that it is not aware of any law which requires a dealership to publicly disclose its shareholders or investors. Neither is the Court—perhaps that's why Lynch failed to cite any authority in support of its position.

▪ As indicated by the U.S. Court of Appeals for the Seventh Circuit, "[t]he law of unfair competition ... is elusive; its elements escape definition...." *Wilson v.*

*Electro Marine Sys., Inc.*, 915 F.2d 1110, 1118 (7th Cir.1990) (applying New York law). "Unfair competition originally was an extension of trademark law, and was limited to circumstances in which a competitor was 'passing off' or 'palming off' the product of another as his own." *Id.* The legal theory, however, has been extended to activity which "so 'shocks[s] judicial sensibilities' or violates 'standards of commercial morality' that it cannot be tolerated." *Id.* Generally speaking, an unfair competition claim requires a misappropriation of the labors and expenditures of another, *i.e.,* one party reaps where another has sown. *Id.* at 1118–19.

▪ Here, the Court cannot accept Lynch's position that Ford's failure to disclose its ownership interest in Landmark and Prestige to the purchasing public qualifies as unfair competition.[3] Indeed, it goes without saying that many corporations hold interests in unrelated companies or subsidiaries. As noted, the Court is not aware of any law which requires shareholders or investors of an entity to disclose their identity to the purchasing public.

Count III is dismissed.

### 2. The Uniform Deceptive Trade Practices Act

▪ In its complaint, Lynch alleges that Ford's act of terminating Lynch's dealership violates § 2(5) and (12) of the Uniform Deceptive Trade Practices Act ("UDTPA"). *See* 815 ILCS 510/2. The complaint, however, is silent as to how the UDTPA is violated. In its response, Lynch argues that Ford's holding out of Landmark and Prestige as independent dealerships when they are really owned and controlled by Ford violates the UDTPA.[4] The Court cannot agree.

---

1. It should be noted that Lynch has not alleged in its complaint that Ford interfered with its customers. Rather, the allegation appeared for the first time in its response to Ford's motion to dismiss. Accordingly, the claim is initially dismissed for failure to allege the elements necessary to state a cause of action.

2. The allegation that Ford failed to inform the public of its ownership interest in Landmark and Prestige is not in the complaint. Accordingly,

the claim is dismissed. The Court will address it anyway, though.

3. Lynch also alleges in its response that Landmark and Prestige sell vehicles at cost or at a loss with Ford making up the difference in subsidies. The allegation, however, is nowhere to be found in the complaint; thus, it will not be considered by the Court.

4. There is no allegation in the complaint that Ford "holds out" Landmark and Prestige as in-

■ As noted by the National Conference of Commissioners on Uniform States Laws, the UDTPA was designed to cover conduct "involving either misleading trade identification or deceptive advertising." 815 ILCS 510. Implicit (if not explicit) within the twelve enumerated subsections of § 2 of the UDTPA is that for a violation to occur, the defendant must make some form of a representation (or do something) to the public (or a potential buyer) regarding a good or service. *See* 815 ILCS 510/2(1)–(12). To be actionable, the representation concerning the good or service must either be false, misleading, or deceptive.

There is no allegation in Lynch's complaint which could fall within the purview of the UDTPA. There is no alleged representation by Ford to anyone concerning an identifiable good or service. Lynch argues that Ford conceals from the buying public that it has an ownership interest in Landmark and Prestige. As noted above, however, numerous corporations and investors own interests in businesses which the public is unaware. Is Lynch suggesting that every shareholder or investor who fails to disclose his interest in a particular entity to the purchasing public is violating the UDTPA? The Court fails to see how such an allegation, by itself, falls within the confines of the UDTPA.

Count IV is dismissed.

### 3. Consumer Fraud and Deceptive Business Practices Act

■ In Count V, Lynch alleges that Ford violated § 2 of the Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"). *See* 815 ILCS 505/2. Specifically, Lynch claims that a violation of the CFDBPA occurred when Ford stated that it was terminating Lynch's dealership for poor sales performance. Lynch states that Ford's reason is a lie. Ford argues that Lynch's

position is insufficient to state a claim under the CFDBPA. The Court agrees.

■ To state a claim under § 2 of the CFDBPA, a plaintiff must plead:[5] (1) a deceptive act or practice; (2) intent on the defendant's part that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Siegel v. Levy Org. Dev. Co., Inc.,* 153 Ill.2d 534, 180 Ill.Dec. 300, 304, 607 N.E.2d 194, 198 (1992); *Lionel Trains, Inc., v. Albano,* 35 F.3d 568 (Table), No. 93–3580, WL 487292 *2 (7th Cir. September 6, 1994).

The Court's analysis focuses on element three—whether the alleged deception occurred in the course of conduct involving trade or commerce. The CFDBPA defines the terms "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property ... and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f).

As noted above, the deceptive act occurred by way of an allegedly fabricated statement made by Ford to Lynch pertaining to Ford's decision to terminate Lynch's dealership. That statement, however, did not involve the "advertisement,"[6] the "offering for sale,"[7] the "sale," or the "distribution" of "any services," "any property," or "any other article, commodity, or thing of value." *See Continental Assurance Co. v. Commonwealth Edison Co.,* 194 Ill.App.3d 1085, 141 Ill.Dec. 711, 715, 551 N.E.2d 1054, 1058 (1990) (allegedly false statements made by corporation to shareholders pertaining to redemption of stock does not qualify as "trade or commerce"). Accordingly, the alleged deceptive

---

dependent dealerships. The Court will address the allegation, however. Lynch also repeats its argument that Landmark and Prestige sell vehicles at cost or losses with Ford covering the difference. Since the allegation is not in the complaint, the Court will not consider it.

**5.** None of the elements are pleaded in the complaint. Thus, the count is dismissed for that reason alone. The Court, however, will address the arguments.

**6.** "Advertisement" is defined in § 1(a).

**7.** "Sale" is defined in § 1(d).

148

act did not occur in the course of conduct involving trade or commerce.[8]

Count V is dismissed.

### III. *CONCLUSION*

For the reasons discussed above, Ford's motion to dismiss Counts III, IV, and V is granted. Counts III, IV, and V of Lynch's complaint are dismissed without prejudice.

---

**8.** Lynch argues that the "trade or commerce" requirement is satisfied because Ford and Lynch enjoyed a "commercial relationship." Although the term "trade or commerce" is to be defined liberally, *People v. Datacom Sys. Corp.*, 176 Ill.App.3d 697, 126 Ill.Dec. 212, 218, 531 N.E.2d 839, 845 (Ill.App. 1st Dist.1988), the Court cannot accept Lynch's position. The statute is specific as to what qualifies as "trade or commerce." It does not include a "commercial relationship"—whatever that is. Rather, the deceptive act must occur in the course of advertising, the offering for sale, the sale, or the distribution of any services, property, or thing of value. That, didn't happen here.