LESTER D. ANTRIM *et al.*, Indiv. and on Behalf of Themselves and All Persons Similarly Situated, Plaintiffs-Appellants, v. UNITED TRANSPORTATION UNION, Defendant-Appellee.

Fifth District   No. 5—93—0493

Opinion filed May 10, 1994.

Carl Runge, of Collinsville, for appellant John Gregory.

Roger B. Thomson, of Grosboll, Becker, Tice & Smith, of Petersburg, for other appellants.

Lance Callis, of Callis, Papa, Hale, Jensen, Jackstadt, Bailey & Halloran, of Granite City, and Norton N. Newborn, of Norton N. Newborn Co., of Cleveland, Ohio, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

The issue presented for review is whether the circuit court erred in holding that the plaintiffs' complaint, which claimed tortious interference with a valid business expectancy, was collaterally estopped by the prior adjudication between the parties in *Antrim v. Burlington Northern, Inc.* (C.D. Ill. Aug. 25, 1987), No. 84—3375, *aff'd* (7th Cir. 1988), 847 F.2d 375, *cert. denied* (1988), 488 U.S. 891, 102 L. Ed. 2d 216, 109 S. Ct. 226. We affirm.

Plaintiffs are, or were at times pertinent here, conductors, brakemen, or firemen with the Burlington Northern Railroad (Burlington) and were represented in collective bargaining under the Railway Labor Act (45 U.S.C.A. § 151 *et seq.* (West 1986)) by the United Transportation Union (the Union). In anticipation of a merger between Burlington and St. Louis San Francisco Railroad in March 1980, the Union and Burlington entered into a "Merger Protection Agreement" to protect levels of pay of Burlington employees who would earn less due to a diversion of traffic as a result of the merger.

The plaintiffs were covered under this agreement. The anticipated merger took place on December 1, 1980.

In December 1980 and thereafter, plaintiffs, along with other Burlington employees who are not parties here but were represented by the Union, filed grievances complaining that their earnings had declined due to loss of work because of diversions of traffic as a result of the merger. Burlington denied all such claims and contended that any loss of work or earnings was due to the normal ebb and flow of traffic and not to diversions of traffic as a result of the merger. The Union referred several claims to arbitration before the Public Law Board No. 3160.

On September 20, 1982, the arbitrator, David Dolnick, ruled that there had been a diversion of traffic due to the merger, but he concluded that he did not have sufficient information upon which to make a conclusive decision on the individual employees' claims to monetary protection under the merger protection agreement. Dolnick remanded the matter to Burlington and the Union but retained jurisdiction for 120 days, within which time the parties would either advise that they had reached an agreement to resolve the claims or wished to return to the arbitrator for a final ruling.

Thereafter, the Union and Burlington entered into two agreements which were to resolve all issues between plaintiffs and Burlington and which waived the rights of the plaintiffs under the merger protection agreement and under the Public Law Board decision of September 20, 1982. These agreements determined which trainmen and firemen were to be "affected" employees entitled to monetary recoupment. One agreement, dated January 31, 1983, was entered into by the Union with Burlington and covers all of the plaintiffs except Wayne Kight. The Union and Burlington entered into a second agreement dated September 26, 1983, that pertained to Wayne Kight. None of the plaintiffs were included in the group of "affected" employees entitled to an award.

After entering into the agreements, the Union took additional claims to arbitration before the Special Board of Adjustment No. 918. That board denied the claims on the basis that they were already resolved by the award of Public Law Board No. 3160 and the agreement of January 31, 1983. The plaintiffs did not have knowledge or notice of the extent of the agreements of January 31, 1983, and September 26, 1983, until the decision of the Special Adjustment Board No. 918 on August 28, 1984, which ruled that the January 31, 1983, agreement terminated all claims for merger protection.

On September 19, 1984, plaintiffs brought an action in the United States District Court for the Central District of Illinois. Plaintiffs

challenged the Union's handling of their grievance claims for monetary benefits under the 1980 merger protection agreement. Plaintiffs complained, *inter alia*, of a breach of the duty of fair representation by the Union under the Railway Labor Act based on the manner of the Union's handling and settling of their grievance claims under the merger protection agreement. By order of August 27, 1987, United States District Judge Mills granted the Union's motion for summary judgment as to plaintiffs' Federal cause of action against it for the intentional breach of its duty of fair representation. Since the court had decided the case on the basis of the Federal claim, it relinquished jurisdiction over the pendent State law claims based on *Graf v. Elgin, Joliet & Eastern Ry. Co.* (7th Cir. 1986), 790 F.2d 1341. The district court's order was upheld by the United States Court of Appeals for the Seventh Circuit. *Antrim v. Burlington Northern, Inc.* (7th Cir. 1988), 847 F.2d 375.

Plaintiffs filed the present action on August 18, 1989, alleging tortious interference with a valid business expectancy. Plaintiffs' complaint alleged in pertinent part:

"The right of the plaintiffs to enter into agreements with Burlington for compensation as a result of plaintiffs becoming 'affected' individuals as a result of the merger between Burlington and Frisco railroads is a valid business relationship or expectancy of the plaintiffs. The defendant and Burlington had knowledge of that relationship or expectancy of the plaintiffs yet having such knowledge the defendant intentionally interfered with such valid business expectancy by entering into the agreements of January 31, 1983 and September 26, 1983 settling all rights of the plaintiffs for merger protection at a time when Burlington and defendant had knowledge that the plaintiffs were 'affected' employees."

The Union filed a motion to dismiss, which alleged that plaintiffs' claim was preempted by Federal law and barred by the doctrine of *res judicata*. The Union also contended that any claim of intentional deprivation of plaintiffs' merger protection agreement rights by the Union's conduct was barred by the doctrine of collateral estoppel. On June 25, 1993, the circuit court dismissed plaintiffs' complaint on the basis of collateral estoppel.

■ The doctrine of collateral estoppel provides that an issue which has been addressed by a court of competent jurisdiction cannot be relitigated in a later action between the same parties in the same or a different cause of action. (*Simcox v. Simcox* (1989), 131 Ill. 2d 491, 496, 546 N.E.2d 609, 611.) The doctrine applies if (1) the issue decided in the prior adjudication is identical with the one presented in the current suit; (2) the prior suit was terminated with a final judgment

on the merits; and (3) the party against whom the estoppel is asserted was a party or in privity with a party in the prior suit. *In re Nau* (1992), 153 Ill. 2d 406, 424, 607 N.E.2d 134, 143.

It is undisputed that the parties to the instant case and the former Federal action are the same. The plaintiffs contend, however, that the issue of intent in the Federal court case is not identical to the issue of intent they raise here. Consequently, they claim they did not have an opportunity in the Federal case to litigate the issue raised here, and they claim the Federal court did not adjudicate the intent issue. In the prior action, plaintiffs' complaint contained counts: (1) alleging a Federal cause of action against Burlington for breach of the merger protection agreement; (2) alleging a Federal cause of action against the Union for intentional breach of the duty of fair representation; (3) alleging a Federal cause of action against the Union for negligent breach of the duty of fair representation; (4) alleging a State law cause of action against the Union for negligent interference with plaintiffs' contractual rights; (5) alleging a State law cause of action against the Union for the intentional interference with plaintiffs' contractual rights; and (6) alleging a State law cause of action against the Union for the knowing and willful inducement of Burlington's breach of contract. The district court determined that counts III and IV were preempted by count I, the Federal law claim of breach of the merger protection agreement. The court further determined that counts V and VI were also preempted by Federal law.

Plaintiffs argue that the prior Federal adjudication that the Union lacked the requisite intent to sustain the Federal claim for intentional breach of the duty of fair representation (count II) is not identical to the issue of intent in the present action. In particular, plaintiffs maintain that, although the district court determined that they failed to show deliberate misconduct by the Union (count II), the court did not decide the issue of whether the Union's conduct rose to the lesser level of intent necessary to sustain a cause of action for the tortious interference with a valid business relationship or expectancy (count V).

Plaintiffs contend that the Federal cause of action for breach of the duty of fair representation requires a showing of spite or ill will, and that the malice involved in the State claim for tortious interference with a business relationship is the intentional doing of a wrongful act without just cause. Plaintiffs cite *Republic Gear Co. v. Borg-Warner Corp.* (7th Cir. 1969), 406 F.2d 57, 61, for the proposition that, as to the State claim, ill will toward the person harmed is not essential; rather, the essential thing is the intent to cause the result.

Plaintiffs contend that because a higher level of intent was necessary to sustain the Federal claim and the district court declined to hear the State claim, the question of whether a lesser level of intent can be shown to establish the State claim has not been adjudicated.

■ The Union contends that both the Federal and State claims include allegations of actual malice and unjustifiable conduct intentionally committed. We agree.

Plaintiffs' State court complaint sets forth the alleged factual basis upon which the State law intentional-interference claim is predicated:

"The Defendant intentionally interfered with the Plaintiffs [*sic*] valid business relationship or expectancy in one or more of the following ways:

A. Failed to process the Plaintiffs' claims for merger protection.

B. Failed to determine how many employees were adversely affected by the merger of Burlington and Frisco based on the then [-]applicable employee seniority agreements.

C. Failed to determine the amount of traffic diverted from the Galesburg-Beardstown-Centralia line by the Burlington and the effect of such diversion upon the Plaintiffs herein.

D. Failed to comply with the customary seniority rules and practices applicable to Plaintiffs in determining the number of 'affected' employees.

E. Failed to determine the number of employees in the Galesburg-Beardstown-Centralia corridor who were adversely effected [*sic*] using the applicable seniority rules of the employees and their respective options to displace employees junior to them.

F. Limited the date upon which the number of employees affected by the merger were [*sic*] determined to one date in December even though such seniority bumping went on for a number of days and months thereafter during the merger protection period thereby terminating all of the remaining employees' right[s] to merger protection who may by virtue of their seniority practices be bumped from scheduled positions on the train boards at some other date in December 1980 or during any other month thereafter during the 6[-]year term of the merger protection agreement.

G. Failed to abide by the order of the Public Law Board No. 3160 to determine the number of employees adversely affected by Burlington's diversion of traffic from the Galesburg-Beardstown-Centralia line and to thereafter notify the Public Law Board of such employees so 'affected'.

H. Improperly waived or otherwise terminated the Plaintiffs' rights with respect to the merger protection agreement and thereafter failed to give notice of such waiver to the Plaintiffs."

The factual allegations upon which the Federal representation claim was predicated are strikingly similar:

"The Defendant, UTU, has failed and refused to faithfully and fairly discharge such duty as required by its position as the exclusive representative of the Plaintiffs in one or more of the following ways:

A. Failed to process the Plaintiffs' claims for merger protection.

B. Failed to determine how many employees were adversely affected by the merger of the Burlington and Frisco based on the then[-]applicable employee seniority agreements.

C. Failed to determine the amount of traffic diverted from the Galesburg-Beardstown-Centralia line by the Burlington and the effect of such diversion upon the Plaintiffs herein.

D. Failed to represent Plaintiffs' rights under the 'Agreement'.

E. Failed to exercise Plaintiffs' administrative remedies under the Railway Labor Act and the bargaining agreement with respect to Plaintiffs' merger protection claims.

F. Failed to investigate Plaintiff's merger protection claims.

G. Failed to advise and discuss Plaintiffs' merger protection claims with the Plaintiffs or to otherwise exercise Plaintiffs' rights with respect to such merger protection claims and the applicable merger protection agreement or to otherwise give notice to Plaintiffs of Defendant UTU's actions on behalf of Plaintiffs.

H. Failed to abide by the order of the Public Law Board 3160 requiring Defendant to determine the number of employees adversely affected by the Defendant Burlington's diversion of traffic from Galesburg-Beardstown-Centralia line and to otherwise notify the Public Law Board of such employees so affected.

I. Have improperly waived or otherwise terminated the Plaintiffs' rights with respect to the 'Agreement'.

J. Entered into an agreement waiving or otherwise terminating Plaintiffs' claims and rights under the 'Agreement' and failed to disclose such agreement to Plaintiffs or discuss the same with Plaintiffs or otherwise obtain Plaintiffs' consent to such agreement.

K. Failed to properly process the Plaintiffs' claims for merger protection.

L. Failed to properly determine how many employees were adversely affected by the merger of the Burlington and Frisco based on the then[-]applicable employee seniority agreements.

M. Failed to properly determine the amount of traffic diverted from the Galesburg-Beardstown-Centralia line by the Burlington and the effect of such diversion upon the Plaintiffs herein.

N. Failed to properly represent Plaintiffs' rights under the 'Agreement'.

O. Failed to properly exercise Plaintiffs' administrative remedies under the Railway Labor Act and the bargaining agreement with respect to Plaintiffs' merger protection claims.

P. Failed to properly investigate Plaintiffs' merger protection claims.

Q. Failed to properly advise and discuss Plaintiffs' merger protection claims with the Plaintiffs or to otherwise exercise Plaintiffs' claims and rights with respect to such merger protection claims and the applicable merger protection agreement or to otherwise give proper notice to Plaintiffs of Defendant UTU's actions on behalf of Plaintiffs.

R. Failed to properly abide by the order of the Public Law Board 3160 requiring Defendant to determine the number of employees adversely affected by the Defendant Burlington's diversion of traffic from Galesburg-Beardstown-Centralia line and to otherwise notify the Public Law Board of such employees so affected."

A comparison of the allegation of intentional misconduct in plaintiffs' State court complaint with the allegation of intentional misconduct in plaintiffs' Federal court complaint demonstrates the similarities of the State and Federal intent issues. While there are differences in some paragraphs as to phraseology, several paragraphs are identical and it appears the issue of intent in the State case is predicated upon the same matter of intent as was at issue in the Federal unfair-representation claim.

Notwithstanding the similarities in the factual allegations in the two complaints, plaintiffs insist that the level of intent required to prove their State claim was neither addressed nor adjudicated in Federal court.

Inasmuch as the Federal cause of action for unfair representation has been denominated as one governing "intentional" misconduct in representation by the labor organization (*Graf v. Elgin, Joliet & Eastern Ry. Co.* (7th Cir. 1983), 697 F.2d 771; *Antrim v. Burlington Northern, Inc.* (7th Cir. 1988), 847 F.2d 375), when the Federal district court addressed the allegations of plaintiffs' complaint, it looked to whether the plaintiffs had shown evidence from which there could be inferred "intentional" misconduct in representation by the Union in regard to the handling of plaintiffs' grievance claims against Burlington. As the district court opinion reflects, plaintiffs made several arguments pertinent to the intent issue in seeking to substantiate the allegations set forth in their unfair-representation claim. Plaintiffs claimed that the Union officials misrepresented or otherwise failed to advise plaintiffs of the progress of their claims, a claim they make here as well; that the Union ignored customary seniority rules, again a claim they make here; that the Union did not

properly handle the grievances under the merger protection agreement and did not properly settle those grievances, a claim made here as well; and that the January 31, 1983, settlement of grievances should not have chosen just one date, December 11, 1980, for purposes of identifying which claimants were affected or displaced under the merger protection agreement, a claim asserted here as well. The district court found that the plaintiffs failed to show deliberate misconduct by the Union.

As we saw in looking at the intentional-interference claim alleged in the present complaint in comparison to the Federal unfair-representation claim, in their pursuit of the State law claim for "intentional" interference with a business expectancy, plaintiffs have put forward the same factual allegations as in the Federal case. What they are seeking to relitigate as a State law "intentional" tort claim is the same fact issue relative to whether the Union intentionally mishandled the grievance claims.

Plaintiffs seek to avoid the identity of the issue of the Union's intent in grievance handling and making the settlement of grievances by suggesting that the State cause of action does not deal with actual malice in the sense of ill will or spite directed at the party but deals only with intentional acts committed without justification, and they argue that the Federal cause of action for unfair representation only dealt with actual malice in the sense of ill will. This is wrong on both points. Both the Federal and State causes include "actual malice," and both include unjustifiable conduct intentionally committed.

The "intent" element of the State law tort has been described as "purposeful interference" (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878) or "intentional interference" (*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 363, 300 N.E.2d 331, 333; *Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 175, 510 N.E.2d 65, 71; *Madonna v. Giacobbe* (1989), 190 Ill. App. 3d 859, 867, 546 N.E.2d 1145, 1151). The Federal cause for unfair representation is not materially different in regard to the requisite intent. The Federal cause includes a prohibition not only against bad-faith conduct but also against lesser intentional conduct as well. This rule has been applied in regard to labor organization action in grievance handling (*Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903) and contract negotiation (*Air Line Pilots Association, International v. O'Neill* (1991), 499 U.S. 65, 113 L. Ed. 2d 51, 111 S. Ct. 1127). In *Vaca*, Justice White explained:

> "The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimina-

tion by unions certified as exclusive bargaining representatives under the Railway Labor Act ***. Under this doctrine, the exclusive agent's authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." (*Vaca*, 386 U.S. at 177, 17 L. Ed. 2d at 850, 87 S. Ct. at 910.)

Thus, in *Vaca* the jury was instructed that the Union would be liable if the employer had wrongfully discharged the plaintiff and if the Union had " '*arbitrarily* ... and without just cause or excuse ... *refused' to press [plaintiff's] grievance* to arbitration." (Emphasis added.) (*Vaca*, 386 U.S. at 176, 17 L. Ed. 2d at 849, 87 S. Ct. at 909.) In *O'Neill*, in responding to an argument that the Union's duty of fair representation requires only that the Union act in good faith and honesty of purpose, the Supreme Court stated:

"[W]e have repeatedly identified three components of the duty, including a prohibition against 'arbitrary conduct.' " *O'Neill*, 499 U.S. at 76, 113 L. Ed. 2d at 63, 111 S. Ct. at 1134.

It is evident in *Vaca* and *O'Neill* not only that intent less than "ill will" or "bad faith" is included within the Federal cause of action as "arbitrary" conduct, but also that "arbitrary" also includes unintended but reckless or unjustifiable action. Accordingly, there is an identity of the "intent" issue decided by the Federal district court and the "intent" issue raised in the present State law claim.

Plaintiffs further contend that they did not have an opportunity to litigate the issue of intent and that the Federal district court did not finally adjudicate that issue. Plaintiffs' contention on this point assumes that there is a different "intent" issue in the present case from that in the Federal cause. As demonstrated, plaintiffs did have a full opportunity to litigate the issue of "intent" in the prior Federal proceeding and the Federal court did adjudicate the matter with finality.

Inasmuch as all of the requirements for establishing a bar based on collateral estoppel were satisfied, we conclude that the circuit court properly dismissed the action based on the rule of collateral estoppel. Accordingly, the decision of the circuit court is affirmed.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.