ASSOCIATED UNDERWRITERS OF AMERICA AGENCY, INC., Plaintiff-Appellant, v. RICHARD McCARTHY *et al.*, Defendants-Appellees (Moore Brown Barnes, Ltd., Defendant).

First District (4th Division) No. 1—03—0577

Opinion filed March 31, 2005.

Novoselsky Law Offices, of Chicago (David A. Novoselsky and Kevin S. Besetzny, of counsel), for appellant.

Lord, Bissell & Brook, L.L.P., of Chicago (Michael P. Comiskey, Hugh S. Balsam, and Jennifer A. Gallagher, of counsel), for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Associated Underwriters of America Agency, appeals from the trial court's grant of summary judgment to defendants Richard McCarthy and Lloyd's of London (Lloyd's) Syndicate No. 51 and from the court's subsequent denial of plaintiff's motion to reconsider. For the reasons that follow, we affirm.

Plaintiff initially filed suit against McCarthy, Lloyd's, and Moore Brown Barnes, Ltd., alleging a violation of the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 1994)) and retaliatory termination of contract. Defendants moved to dismiss, and plaintiff acquired new counsel and was granted leave to file an amended complaint.

The following facts were undisputed. In the early 1990s, a company called Republic Hogg Robinson of Florida (Republic) developed a market for the insurance of hotels and related properties by organizing a network of subproducers, contacts, leads, expirations, renewals

and related information that came to be known as the National Hotel Program (the Program). Republic asked defendant McCarthy, then the lead underwriter for Lloyd's Syndicate No. 212, to underwrite and act as the insurance carrier for the Program. McCarthy agreed and the parties arranged for Lloyd's to have access to Program information for purposes of underwriting insurance policies and for Republic to receive commissions for the premiums it generated for the Program. Premiums were placed through Lloyd's London broker, Steel Burrill Jones.

In 1993, plaintiff, an Illinois insurance wholesaler, purchased several of Republic's assets, including the National Hotel Program and its appurtenant information. At that time, Elizabeth Rhodes was the authorized underwriter for the Program. As part of the purchase agreement, plaintiff employed Rhodes to administer the program and assumed the same terms and conditions with respect to the underwriting and operation of the National Hotel Program as had been in effect between Lloyd's and Republic. Also at that time, McCarthy was associated with Lloyd's Syndicate No. 51, which assumed the duties Syndicate No. 212 had performed under the Program between Republic and McCarthy. Plaintiff resumed acting as Lloyd's broker for the National Hotel Program.

In March 1994, Moore Brown Barnes acquired Steel's North American operations and assumed Steel's duties as Lloyd's London broker. Through Moore Brown Barnes, plaintiff became "tribunalized," meaning it was granted certain access to the London insurance market in addition to the properties it insured in the United States. In November 1994, Moore Brown Barnes issued a renewal cover note to plaintiff on behalf of Lloyd's effective for one year, beginning in August 1994. The cover note granted plaintiff binding authority to underwrite insurance on behalf of Syndicate No. 51 for United States hotel properties.

That same year, Rhodes met with Harvey Sheldon, vice president of Advanced Insurance Underwriters (Advanced), and inquired whether Advanced might be interested in participating in the National Hotel Program. Sheldon agreed to participate and was advised that the Program would be insured by Lloyd's, though he was not apprised of the particular syndicates, underwriters, or brokers associated with the Program. In February 1995, plaintiff and Advanced entered into a brokerage agreement providing that Advanced would retain independent ownership of the business produced during the companies' relationship as well as expirations, billing information, and sales data. The agreement was nonexclusive and terminable by either party at any time. The majority of the business Advanced placed with plaintiff were hotels located in Florida.

In summer 1994, McCarthy expressed concern over the profitability of the National Hotel Program and advised Rhodes that continued losses could affect its continuation. In January 1995, McCarthy directed plaintiff to cancel the insurance policy for Regency Windsor Management, a Program insured that had experienced a bad year financially, based on a measurable risk increase. Plaintiff refused to cancel the policy and instead found a substitute insurer for Regency. In March 1995, McCarthy, through Moore Brown Barnes, notified plaintiff that he had decided to cancel the Program because it had not been profitable for some time. Rhodes informed Sheldon, who at that time was seeking new insurers for many of his Florida apartment and condominium building customers.

Sheldon worked in the same building as John Nava, owner of the Florida Adjustment Bureau, which served as the third-party administrator of the National Hotel Program. Shortly after McCarthy terminated the Program, Nava informed Sheldon that Robert Brown of Moore Brown Barnes would be in Florida in the near future and suggested that the two meet. Sheldon met with Brown and discussed the possibility of Advanced serving as a Lloyd's cover holder through a program of insurance for condominiums and apartment buildings. In April 1995, Sheldon traveled to London to meet with several Lloyd's underwriters and was introduced to members of the Moore Brown Barnes staff as well as McCarthy. As a result of those meetings, Advanced began placing policies with McCarthy and Syndicate No. 51, mainly to insure apartments and condominiums. Advanced insured a few hotels in London through its affiliation with Lloyd's.

In its complaint, plaintiff alleged that Moore Brown Barnes and Lloyd's relationship with Sheldon and Advanced amounted to an effort to solicit plaintiff's subproducers and place insurance through the subproducers to plaintiff's exclusion and that such business was executed using Program information. Plaintiff alleged that such solicitation was in accordance with a scheme by defendants to misappropriate and convert Program information in an effort to market insurance and place insurance business through plaintiff's confidential subproducers.

Plaintiff contended that defendants' actions constituted a violation of the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 1994)), a breach of its confidentiality and exclusivity agreement with Lloyd's, breach of contract, tortious interference with its prospective economic advantage, a violation of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 1994), and civil conspiracy. In relief, plaintiff sought a permanent injunction barring defendants from making false or misleading statements to plaintiff's customers and subproducers and compensatory damages.

Defendants McCarthy and Lloyd's Syndicate No. 51 moved for summary judgment, arguing that plaintiff could not identify any of its previous retail customers that were insured by Lloyd's after the National Hotel Program was terminated and could identify only one of its subproducers (Advanced) that had placed business with defendants after the Program's termination. In opposing the motion, plaintiff contended that a question of fact was created by the deposition testimony of Maurice Rutty, director of Citadel Insurance, a brokerage that specialized in obtaining business for Lloyd's. Rutty testified that one of the Moore Brown Barnes partners (it was unclear which one) asked him to arrange an introduction to Sheldon in late 1994 or early 1995. Rutty stated that he agreed to arrange such an introduction, but it was unclear whether and when any introduction took place, and Rutty could not recall whether Sheldon had ever met with anyone from Moore Brown Barnes. Rutty also testified that he had spoken with Sheldon, although it was unclear whether he had done so at Moore Brown Barnes' behest, and Sheldon indicated that he was interested in establishing an insurance program with Lloyd's without having to do so through a wholesaler. Sheldon had testified that he first met Robert Brown of Moore Brown Barnes shortly after the National Hotel Program was terminated, and McCarthy testified that George Moore had asked him to meet with Sheldon in April 1995.

After briefing and oral arguments, the trial court granted defendants' motion on all counts, finding that Sheldon entered into a relationship with Lloyd's of his own volition and that neither McCarthy nor Lloyd's initiated that relationship. The trial court found no indication that McCarthy had misappropriated any trade secrets or proprietary information nor any indication that McCarthy or Lloyd's committed any of the other misdeeds plaintiff alleged, stating that the program defendants conducted with Advanced was distinct from the program they conducted with plaintiff.

Plaintiff filed a motion to reconsider, contending that the trial court mistakenly concluded that Moore Brown Barnes, as a Lloyd's broker, acted as an agent of the insured, not Lloyd's, in dealing with plaintiff. Plaintiff also argued that the court mischaracterized the nature of the Program and that defendants conducted a similar program with Advanced to plaintiff's detriment. Lastly, plaintiff argued that the trial court incorrectly held that the testimony of Sheldon and Rutty was not inconsistent and did not create a triable issue of fact. The court denied plaintiff's motion, finding that Moore Brown Barnes acted as plaintiff's agent in having its insurance policies underwritten by defendants, that there was no exclusivity or confidentiality breached by Advanced's interaction with defendants,

and that any discrepancies between Sheldon's and Rutty's testimony were immaterial and did not create a question of fact concerning claims against the moving defendants.

On appeal, plaintiff contends that the trial court erred in granting summary judgment and in denying his motion to reconsider because there were genuine issues of material fact as to: (1) whether defendants colluded with Moore Brown Barnes to deprive plaintiff of its business; (2) whether defendants violated the Trade Secrets Act; (3) whether defendants breached a contract with plaintiff; (4) whether defendants tortiously interfered with plaintiff's prospective economic advantage; and (5) whether defendants violated the Uniform Deceptive Trade Practices Act. Plaintiff also contends that the trial court erred in denying its motion to reconsider the grant of summary judgment because there were issues of material fact as to: (1) whether Moore Brown Barnes acted as defendants' agent; (2) whether the Program ceased to exist once defendants cancelled it or only plaintiff's participation in it; and (3) whether the Program remained profitable for plaintiff in the form of future commissions.

■ We preliminarily note that plaintiff's brief fails to comply with supreme court rules governing appellate procedure in several instances. Plaintiff alleges several facts without citing to the record, in violation of Supreme Court Rule 341(e)(6). 188 Ill. 2d R. 341(e)(6). Also, plaintiff's contentions often rely on speculation, insinuation, suppositions, and hypotheticals, and seldom rely on actual legal argument or legal authority, in violation of Supreme Court Rule 341(e)(7). 188 Ill. 2d R. 341(e)(7). These failures to follow supreme court rules allow this court to deem any issues to have been waived. *Williamson v. Opsahl*, 92 Ill. App. 3d 1087, 1089 (1981). Nevertheless, we have the benefit of defendants' brief and a sufficient record to consider the relative merits of plaintiff's arguments. See *Tannenbaum v. Lincoln National Bank*, 143 Ill. App. 3d 572, 575 (1986).

This court reviews a trial court's grant of summary judgment *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2002); *Morris*, 197 Ill. 2d at 35. A trial court is required to construe the record against the moving party and may only grant summary judgment if the record shows that the movant's right to relief is clear and free from doubt. *People ex rel. Department of Labor v. MCC Home Health Care, Inc.*, 339 Ill. App. 3d 10, 19 (2003). If disputes as to material facts exist or if reasonable minds may differ with respect to the infer-

ences drawn from the evidence, summary judgment may not be granted. *MCC Home Health Care*, 339 Ill. App. 3d at 19.

■ Plaintiff initially contends that the trial court erred in granting summary judgment because there is a genuine issue as to how Sheldon's working relationship with defendants developed. Specifically, plaintiff argues that Rutty's deposition testimony established that Moore Brown Barnes sought introduction to Sheldon in 1994, before Lloyd's terminated the National Hotel Program, and that Rutty agreed to introduce one of the Moore Brown Barnes partners to Sheldon in late 1994 or early 1995. Plaintiff maintains that this testimony demonstrates that it was defendants who sought to conduct business with Sheldon and not vice versa, as defendants argued. Plaintiff goes on to state that once they had secured an introduction to Sheldon, defendants devised a scheme that resulted in the termination of their relationship with plaintiff and the continued use of the Program and its related information to plaintiff's exclusion.

Plaintiff also contends that defendants' reason for cancelling the Program, *i.e.*, nonprofitability, was disingenuous in light of a letter Sheldon had sent to McCarthy in April 1995, characterizing the National Hotel Program as a "tremendous facility" and stating it had placed a "good volume of business" through it. Lastly, plaintiff argues that it suffered damages in the form of the consideration it paid for the right to market the Program in the United States and the subsequent loss of commissions and policy renewals for customers who purchased insurance through the Program.

Defendants respond that the only written contract between plaintiff and Lloyd's (the August 1994 cover note) was cancelled in accordance with its terms and that plaintiff has not been able to demonstrate any other agreement that it alleges defendants somehow breached. They also maintain that, even if the National Hotel Program information was secret and proprietary, only one of the Program subproducers (Advanced) did any business with Lloyd's after the Program's termination and only insured customers mainly in the apartment and condominium business in the London market. Defendants also argue that Sheldon approached them and that if any instigation was involved, it came from Moore Brown Barnes. We agree with defendants.

Plaintiff has not been able to produce any evidence of a contractual obligation on defendants' part to refrain from doing any business with any National Hotel Program subproducers in perpetuity. The November 1994 cover note contained no exclusivity or confidentiality provisions. Plaintiff's complaint alleged that a contract existed between Republic and McCarthy establishing Republic as the owner of

the Program information, which was understood to be confidential and proprietary, and that after plaintiff purchased the Program, McCarthy agreed to underwrite the Program under the same terms and conditions as had been in effect when Republic owned the Program. However, plaintiff attached no copies of any such contract, and Jord Hauge, plaintiff's president, could not testify to the existence of any such agreement at his own deposition.

Nor has plaintiff demonstrated any evidence of a plan by defendants to solicit Program participants to the exclusion of plaintiff. The only instance of such a transaction was Advanced's approach of Lloyd's to insure mainly non-hotel properties located in London. The only instance of any instigation for Advanced to do business with defendants, according to Rutty's testimony, came from Moore Brown Barnes, a party that plaintiff has voluntarily dismissed. Moreover, Rutty's testimony only established that he was asked by and agreed to introduce one of the Moore Brown Barnes principals to Sheldon, not that he had actually done so nor that anything resulted from the introduction.

Lastly, defendants' reasons for cancelling the cover note were not relevant, since it was terminable by either party at any time. The note contained no provisions defining justification for termination. Plaintiff also failed to prove damages in the form of lost commissions and renewals by insurance customers because it was unable to demonstrate that it had lost any of its previous customers due to defendants' collaboration or that Advanced was prohibited from insuring properties through Lloyd's in the London market. The majority of customers insured through the Program were hotel properties in the United States, while the majority of properties Advanced insured through Lloyd's were apartment and condominium properties in London.

Based on the foregoing analysis, we conclude that plaintiff failed to sufficiently allege any collusion between Moore Brown Barnes and defendants with the goal of undermining any agreements with plaintiff and deprive it of business opportunities and that the trial court's grant of summary judgment was not erroneous.

■ Plaintiff next contends that it raised a genuine issue of material fact as to whether defendants violated the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 2000)). The Trade Secrets Act defines a trade secret as information including technical or nontechnical data, processes, financial data, or lists of actual or potential customers or suppliers that: (1) is sufficiently secret to derive economic value from not being generally known to others who could obtain economic value from its use; and (2) is the subject of reasonable efforts to maintain its secrecy or confidentiality. 765 ILCS 1065/2(d) (West 2000).

To state a claim under the Act, a complainant must allege that the *information at issue was: (1) secret; (2) misappropriated; and (3) used in the defendant's business. Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 411 (N.D. Ill. 2001).

In its complaint, plaintiff alleged that it maintained the National Hotel Program information as confidential and that defendants misappropriated the information by disclosing and using it to develop and market a program of insurance under the Program's auspices without plaintiff's assent.

First, we fail to ascertain how the existence of Advanced, one of plaintiff's subproducers, or its interest in insuring London properties could have been secret and proprietary information. Hauge testified that the Program information on each of its insureds was known to subproducers, the insureds, and the insurers, and that information on expirations, leads, and renewals belonged to the Program's subproducers. Also, the brokerage agreements between plaintiff and its subproducers stated that the retail brokers owned the insurance business that they underwrote. Second, the deposition testimony established that Sheldon approached defendants about doing business in London and did so only after defendants cancelled the Program. The evidence available to the trial court failed to establish the secrecy of the Program information or the misappropriation thereof by defendants. Accordingly, the trial court was correct in granting summary judgment on that count.

■ Plaintiff next contends that it raised a genuine issue of material fact as to whether defendants breached contracts of exclusivity and confidentiality. To state a cause of action for breach of contract, a complainant must allege the existence of a contract, performance of its conditions by complainant, a breach by the defendant, and damages as the result of the breach. *Shubert v. Federal Express Corp.*, 306 Ill. App. 3d 1056, 1059 (1999).

In its complaint, plaintiff referred to a July 8, 1993, contract between it, McCarthy, and Lloyd's granting plaintiff the right to serve as the exclusive broker in the United States for the National Hotel Program, and alleged that the Program information was understood by all parties to be proprietary and confidential. As stated above, plaintiff was unable to produce a copy of the alleged contract, and its own president was unable to recall any such agreement in his deposition testimony. The only other evidence of any kind of agreement was the 1994 cover note, which contained no confidentiality or exclusivity provisions, and the alleged breach of which occurred only after its termination at the impetus of a party other than defendants. Finally, as stated above, plaintiff was unable to demonstrate any damages as

the result of Advanced and defendants' collaboration. Therefore, we find that summary judgment was appropriate as to this count.

■ Next, plaintiff contends that it raised a genuine issue of material fact as to whether defendants tortiously interfered with plaintiff's prospective economic advantage. In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must allege that: (1) he had a reasonable expectancy of a valid business relationship; (2) defendant knew about the expectancy; (3) defendant intentionally interfered with the expectancy and prevented it from ripening into a valid business relationship; and (4) the intentional interference injured the plaintiff. *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 994 (1993). A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed toward that third party. *Schuler*, 265 Ill. App. 3d at 994-95.

In this case, the evidence available to the trial court indicated that, while plaintiff may have had a reasonable expectancy of a valid business relationship with Advanced, there was no indication that defendants knew of such an expectancy or that they intentionally interfered with it to plaintiff's detriment. The testimony elicited during discovery indicated that Advanced approached defendants concerning insuring properties in the London market. Sheldon indicated that he contacted defendants of his own volition and not at their behest. Moreover, defendants terminated their operating relationship with plaintiff before forming any relationship with Advanced. Further, plaintiff could not point to any losses it incurred as a result of Advanced's collaboration with defendants. Accordingly, plaintiff could not sufficiently allege intentional interference by defendants or injury resulting therefrom, and summary judgment on this count was appropriate.

■ Plaintiff next contends that it raised a genuine issue of material fact as to whether defendants violated the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 *et seq.* (West 2000)). Plaintiff's complaint alleged that defendants had communicated to plaintiff's subproducers that they had developed the National Hotel Program, that plaintiff had not acted competently as the broker for the Program, and that defendants were no longer accepting business from plaintiff on that basis.

A defendant engages in a deceptive trade practice when he disparages the services or business of another by a false or misleading representation of fact. 815 ILCS 510/2(a)(11) (West 2000). For a violation to occur, the defendant must make some form of a communication to the public regarding the victim's services that is false, misleading,

or deceptive. *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997).

In its complaint and on appeal, plaintiff is unable to point to any specific communication by defendants that disparaged plaintiff's business. It only alleged that defendants conveyed to plaintiff and some of its subproducers that defendants believed the National Hotel Program was unprofitable and that they had decided to terminate the Program on that basis and that Moore Brown Barnes' communication with Rutty concerning Sheldon constituted a deceptive trade practice. We do not agree. Plaintiff cites no instance where defendants disparaged its abilities or integrity, only statements as to the profitability of the Program and Moore Brown Barnes' interest in meeting with Sheldon. Accordingly, we find that summary judgment was appropriate on this count.

■ Plaintiff next contends that the trial court erred in denying its motion to reconsider its order granting summary judgment. It argues that there was at least a question of fact as to whether Moore Brown Barnes acted as defendants' agent in communicating an interest in meeting with Sheldon to Rutty. Plaintiff argues that Moore Brown Barnes, as a licensed Lloyd's broker, acted as defendants' agent in that instant and thus vicariously sought out business with one of plaintiff's subproducers prior to the termination of the National Hotel Program. Plaintiff points to several communications from defendants via Moore Brown Barnes and contends that defendants' method of communicating through Moore Brown Barnes indicates that Moore Brown Barnes served as defendants' agent rather than plaintiff's. We disagree.

Common law assumes that an insurance broker acts as an agent of the insured, not the underwriter, where it is employed by the insured to procure insurance. *Evvtex Co. v. Hartley Cooper Associates, Ltd.*, 102 F.3d 1327, 1331-32 (2d Cir. 1996). Such an assumption can be overcome only by a showing of exceptional circumstances indicating that the broker's arrangement with the insurer is such that the standard relationship should not be assumed. *Gold Star, Inc. v. Lloyds of London Ins. Underwriters*, 113 F.3d 1229 (2d Cir. 1997).

Here, plaintiff was the insured, Moore Brown Barnes was the broker, and defendants were the underwriters. Because plaintiff was not initially licensed to serve as a Lloyd's broker, plaintiff was required to obtain insurance with Lloyd's through a broker, in this instance Moore Brown Barnes, which was duly licensed to operate as a Lloyd's broker. In addition to the documents cited by plaintiff, the trial court took notice of several other communications from Moore Brown Barnes to plaintiff, some of which contained the phrase, "In accordance with your instructions." Assuming Moore Brown Barnes did indeed

act in accordance with plaintiff's instructions, it is not unreasonable to conclude that Moore Brown Barnes acted as plaintiff's agent. Moreover, individuals and business entities constantly communicate with each other through their respective agents; this mode of communication is not necessarily indicative of whom the agent serves. Accordingly, we conclude that plaintiff was unable to demonstrate exceptional circumstances sufficient to overcome the assumption that Moore Brown Barnes acted as its agent and that the trial court's denial of the motion to reconsider was not erroneous.

Plaintiff next contends that the trial court erred in denying its motion to reconsider because plaintiff sufficiently demonstrated it was appointed Moore Brown Barnes' exclusive subagent for the National Hotel Program, that the term of Moore Brown Barnes' agency with Syndicate No. 51 was continuous subject to 30 days' notice of cancellation, that the "Leading Underwriter" never notified plaintiff that the Program was terminated, and that Moore Brown Barnes' mid-term termination of plaintiff's participation in the Program constituted a breach of Syndicate No. 51's agreement with plaintiff.

With regard to this contention, plaintiff fails to refer to any agreement or any other evidence or law to support its argument. Accordingly, we deem this issue waived.

Plaintiff next contends that the trial court erred in finding that the Program itself had been terminated, arguing instead that only its own participation in the Program had been terminated and that defendants' subsequent pursuit of a similar program involving Advanced constituted some sort of violation, that its damages sound in lost commissions, and that the testimony of Rutty did indeed create a triable issue of fact. Having already determined that defendants' relationship with Advanced in no way constituted any kind of tortious conduct or in any way injured plaintiff, we see no need to resolve these same issues again, despite plaintiff's rephrasing of its previous arguments. We find that the trial court's denial of the motion to reconsider was not erroneous.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

REID, P.J., and QUINN, J., concur.