In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1800

DELORIS ALI,

*Plaintiff-Appellant,*

*v.*

ROBERT SHAW,[1]

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05-C-1708—**Suzanne B. Conlon**, *Judge.*

---

ARGUED DECEMBER 8, 2006—DECIDED MARCH 23, 2007

---

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Deloris Ali was fired from her job at the Cook County Board of Review. She brought a three-count complaint against the Board and against one of the commissioners of the Board, Robert Shaw. The district court granted summary judgment to the defen-

---

[1] The case was originally docketed as *Deloris Ali v. Cook County Board of Review and Robert Shaw*. Ali did not appeal the district court's grant of summary judgment in favor of the Board on all counts and only appeals the count against Robert Shaw personally. Accordingly, we have modified the name to reflect the parties to the case on this appeal.

dants on all counts. The plaintiff appeals the decision on the third count against Shaw individually. We affirm.

## I. BACKGROUND

Because this appeal comes to us after a grant of summary judgment in favor of the defendant, we will recount the facts in the light most favorable to Ali, the non-moving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Deloris Ali worked at the Cook County Board of Review for approximately fourteen years before the events that ultimately led to this lawsuit. She amassed a nearly flawless work record during that time. Robert Shaw was elected as a commissioner of the Board around 1998 and lost his bid for reelection in the primary election of March 2004.

Ali was fired for insubordination very shortly after Shaw lost the primary. We should note that our task to recount the facts in the light most favorable to Ali becomes a challenge at this point because some aspects of the testimony simply do not add up. The relevant deposition testimony of five major actors in this drama can be summarized as follows. Ali claims that she never had any interaction with Shaw in the aftermath of his election loss. Shaw agrees that he and Ali did not exchange any words over the election loss. But three other Board employees paint a different picture. Ali's supervisor, Charliemae Towbridge, provided deposition testimony that Shaw approached her and requested that she transfer Ali because Ali had made some comments to Shaw which celebrated his election defeat. Joseph Berrios, another commissioner along with Shaw, indicated that Shaw had approached him to request that the Board terminate Ali for insubordination. Thaddeus Makarawicz testified that Berrios informed him that the Board would be terminating Ali for insubordination at the request of Shaw. What

complicates our consideration of this case is that both Shaw and Ali deny that the alleged insubordination, in the form of Ali reveling in Shaw's election loss, ever occurred. In fact, Shaw denies having any idea why Ali was fired or taking part in any decision along those lines.

There is no way to reconcile all of these various versions of the events. But because we must view them in the light most favorable to Ali, we will assume that (whatever her personal views on the primary elections) she did not outwardly revel in Shaw's election defeat. We will also assume that Shaw did initiate the Board's action to fire her for insubordination and that the Board acted on his request. Under this view of the facts, we must assume, without deciding, that Shaw's testimony that he never asked the Board to fire Ali was self-serving and false.[2] Ali alleged in her complaint that "the real reason for the termination was Shaw's belief that the Plaintiff was rejoicing in his election defeat." Because she testified that she had engaged in no such rejoicing, we will also assume that Ali is pleading that Shaw *erroneously* believed that she had been rejoicing in his defeat.

The facts become clear again after this point. Ali was quickly reassigned to another floor. As soon as Berrios was informed of Shaw's desire, Ali was terminated. The stated reason for her termination was insubordination.

---

[2] We emphasize that we are not making determinations on the credibility of Shaw or any other witness, because to do so would be improper. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) ("At summary judgment a court may not assess the credibility of witnesses. . . ."). Nevertheless, we have to find a way to view the testimony of the other board members in the light most favorable to Ali, and to do so requires that we assume purely for the sake of argument that Shaw asked the Board to fire her and then falsely denied any involvement once he was facing a lawsuit.

She filed a multiple-count lawsuit alleging violation of her First Amendment right of free speech, tortious interference with an employment contract, and tortious interference with prospective economic advantage. The district court granted the defendants' motion for summary judgment on all counts. Ali appeals only the decision with respect to tortious interference with prospective economic advantage.

## II. ANALYSIS

We review an appeal of summary judgment *de novo. Lee v. Keith*, 463 F.3d 763, 767 (7th Cir. 2006). At summary judgment, a party is entitled to judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The only claim that remains on this appeal is a common law tort action under the laws of Illinois. When resolution of an issue depends on state law, we must apply the law that would be applied in this context by the state supreme court. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 773 (7th Cir. 2002).

To succeed in an action for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: (1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877-78 (Ill. 1991).

An at-will employee can show a reasonable expectation of future economic advantage. *Id*. at 878. The parties agree that in Illinois there is a rebuttable presumption that at-

will employment will continue as long as both parties desire that the economic relationship remain in place. *Cashman v. Shinn*, 441 N.E.2d 940, 944 (Ill. App. Ct. 1982) ("[B]oth parties to the at-will contract must be willing and desirous of continuing it in order for the action to lie when the contract is at-will."). However, as the defendants note, by March 30 one party did not want the employment relationship to continue—otherwise she would not have been fired.

Ali correctly argues that it cannot be the case that there is never a reasonable expectation of continued economic advantage anytime an employer decides to fire an at-will employee. To accept such a theory would eviscerate the holdings of *Cashman* and *Fellhauer* that an at-will employee has at least a chance to prove a cause of action. Ali argues that this requires Shaw to put forward some proof (other than the Board's decision to fire her) that the Board no longer desired her services. In the absence of such proof, she argues, the presumption of continued employment is not rebutted.

Resolving this requires that we return to *Fellhauer* and consider it in light of the relationship between Shaw, Ali, and the Board of Review. Although Ali correctly cites to *Fellhauer* as the controlling Illinois case, the full extent of *Fellhauer*'s holding dooms her argument here. In *Fellhauer*, a city employee brought suit for tortious interference when the mayor, acting within authority granted by statute, fired him. The court in *Fellhauer*, after establishing the rule of law that an at-will employee may have a cause of action for tortious interference, affirmed the dismissal of Fellhauer's complaint anyway. In doing so, the court distinguished his situation from cases of "outsiders intermeddling maliciously in the contracts or affairs of other parties." *Fellhauer*, 568 N.E.2d at 879 (quoting *Loewenthal Sec. Co. v. White Paving Co.*, 184 N.E. 310 (Ill. 1932)).

Shaw was a member of the Board that ultimately fired Ali. The parties agree that the Board had the discretion to hire and fire the clerks. The deposition testimony established that the Board would act as a body when firing employees, but that when one commissioner wanted an employee fired the other commissioners tended to defer to that commissioner's desires. Although Shaw likely did not have the same level of statutory autonomy that the mayor in *Fellhauer* held, he was certainly far from an intermeddling outsider: he was her boss. In the corporate world, officers enjoy immunity from these types of claims provided that they took the action in pursuit of the legitimate interests of the company. *Swager v. Couri*, 395 N.E.2d 921, 927-29 (Ill. 1979). *Fellhauer* extended the *Swager* reasoning to the context of local government employees. *Fellhauer*, 568 N.E.2d at 879.

*Fellhauer* sets out a limited tort cause of action at a different end of the range of potential situations: when a third party maliciously sticks his nose into the economic relationship between an employee and an employer and causes the employee to lose her job, that third party is subject to the tort cause of action even if the employment was at-will. *Fellhauer* holds that such a tortfeasor ought not escape liability simply by arguing that the employee was at-will and that the employer could have fired her anyway. We read *Fellhauer* to say that only when the actions of a third party cause an employer to decide to fire an at-will employee, the third party might be liable in tort.

This is consistent with more recent Illinois cases that have considered the third party requirement since *Fellhauer*. In *Schuler v. Abbott Labs.*, Illinois clarified that a plaintiff "states a cause of action only if he alleges a business expectancy with a specific third party." 639 N.E.2d 144, 147 (Ill. 1993) (citing *Parkway Bank & Tr. Co.*

*v. City of Darien,* 357 N.E.2d 211 (Ill. 1976); *Du Page Aviation v. Du Page Airport Auth.,* 594 N.E.2d 1334 (Ill. 1992)). The third-party requirement for tortious interference with prospective economic advantage has been reiterated by the lower courts of Illinois as recently as 2005. *See Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005) ("A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party."). The relationship between Shaw, Ali, and the Board puts this case into the category of an employment decision rather than third-party interference.

Ali attempts to circumvent this argument by arguing that Shaw's actions were so malicious that he effectively overstepped his privilege to act on behalf of the Board in arranging her termination. Appellant's Br. at 28-34. Once again, a comparison to *Fellhauer* is informative. The plaintiff in *Fellhauer* had concerns about how the new mayor was interacting with certain businesses that had contracts with the city. 568 N.E.2d at 872-73. The mayor ordered the plaintiff not to speak with any member of the city council about his concerns. *Id.* The plaintiff then asked, in writing, for a description of exactly what his duties were, upon which he was fired. *Id.* Finding that these facts did not establish sufficient malice, the court affirmed the dismissal of the complaint for failing to state a claim. *Id.* at 878-79. Shaw's reasons for firing Ali, if we assume that he fired her for perceived insubordination, contain even more of a legitimate justification for terminating Ali. Insubordination provides adequate grounds for termination under Illinois law. *Circle Sec. Agency Inc. v. Ross*, 437 N.E.2d 667, 673 (Ill. App. Ct. 1982).

### III.  CONCLUSION

Reasonable people might consider Shaw's alleged actions to be boorish. The Board appears to have lost an otherwise exemplary employee because of those alleged actions. Be that as it may, Shaw's alleged actions did not constitute a tort under Illinois law. For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*